UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHUBB NATIONAL INSURANCE CO., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 18-cv-11619-DJC |
| BST PLUMBING AND HEATING, INC., | ) ) ) | |
| Defendant. | ) ) ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                     September 30, 2021

**I.    Introduction**

Plaintiff Chubb National Insurance Company ("Chubb"), as subrogee of Paris and Marie-Claire Panagiotopoulos ("Owners"), has filed this lawsuit against Defendant BST Plumbing & Heating, Inc. ("BST") alleging that BST was negligent in its installation of a pot filler that caused damage to the Owners' residence in Chestnut Hill, Massachusetts ("Residence"). D. 24. The parties have cross-moved for summary judgment. D. 48; D. 55. BST has also moved to dismiss the complaint against it, or alternatively to strike certain evidence, for alleged spoliation. D. 49. For the reasons stated below, the Court DENIES Chubb's motion for summary judgment, D. 48, DENIES BST's cross-motion for summary judgment, D. 55, and DENIES BST's motion for sanctions due to spoliation, D. 49.

**II.   Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter

1

of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III. Factual Background

The following facts are drawn from the parties' submissions of material facts and documents cited therein, D. 48-1; D. 54, and the parties' responses to same, D. 53; D. 58, and are undisputed unless otherwise noted.[1]

---

[1] Submissions of material fact in support of a motion for summary judgment must include specific citations to the record. Brown v. Armstrong, 957 F. Supp. 1293, 1297–98 (D. Mass. 1997) (quoting D. Mass. Local Rule 56.1), aff'd, 129 F.3d 1252 (1st Cir. 1997). Failure to comply with the Rule may result in the Court declining to consider a purported fact that is conclusory, not based upon record evidence or clearly inadmissible. Id.; Fisher v. Town of Orange, 964 F. Supp. 2d 103, 108 n.3 (D. Mass. 2013). Moreover, "[d]ocuments supporting or opposing summary judgment must be properly authenticated." Carmona, 215 F.3d at 131 (citing Fed. R. Civ. P. 56(e)). Here, BST urges the Court to strike certain of Chubb's statements of fact for failure to comply with these requirements. See, e.g., D. 53 ¶¶ 2 (citing to unverified amended complaint), 5–6 (citing to deposition testimony), 21 (citing to deposition testimony), 23 (citing to expert report), 26–29 (failing to cite any record evidence). Accordingly, the Court will not consider the statements that cite to allegations in the unverified complaint. See D. 48-1 ¶ 2; Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991) (concluding that, for summary judgment, allegations in complaint could be treated as affidavit when verified and non-conclusory). The Court further declines to consider the statement of fact that quotes from and cites to Chubb's expert report, as such report has not been sworn or authenticated by Chubb's purported expert. See D. 48-1 ¶ 23; Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Lastly, the Court declines to consider statements of fact that

In or around 2013 and 2014, BST selected and installed a pot filler, which included the piping that supplied water to the pot filler, as part of the Residence's original construction. D. 48-1 ¶¶ 8, 13; D. 53 ¶¶ 8, 13. As the pot filler's installing plumber, BST was subject to Massachusetts regulations that required it to, among other things, provide protection for freezing pipes. D. 48-1 ¶¶ 9–13; D. 53 ¶¶ 9–13. Kagan Development Corporation ("Kagan"), the Residence's general contractor, made the final decision to install the pot filler on an exterior wall at the Residence. D. 54 ¶¶ 30–31, 39; D. 58 ¶¶ 30–31, 39. Kagan usually performs an inspection of the pipes before sheetrock is boarded to make sure insulation is properly installed and that no pipes are touching the exterior wall. D. 54 ¶ 42; D. 58 ¶ 42. BST was aware that installing a pot filler in an exterior kitchen wall could lead to the water line freezing and alerted Kagan to these insulation and freezing concerns. D. 48-1 ¶ 19; D. 53 ¶ 19; D. 54 ¶ 38; D. 58 ¶ 38. BST did not perform any insulation work at the Residence. D. 48-8 at 7. BST did not inspect the pot filler to ensure it was protected from freezing temperatures. D. 48-1 ¶ 20; D. 53 ¶ 20. The Residence passed a final plumbing inspection on September 24, 2014. D. 54 ¶ 35; D. 58 ¶ 35. When the Owners purchased the Residence in December 2015, they had an inspection performed, which noted areas that needed corrected or replaced insulation, such as the insulation above the bulkhead door, but did not mention the pot filler. D. 54 ¶¶ 43–45; D. 58 ¶¶ 43–45.

At some point prior to December 17, 2016, water stopped flowing out of the pot filler, such that the Owners could not tell whether the faucet was open or closed. D. 48-1 ¶¶ 3–4, 15; D. 53 ¶¶ 3–4, 15. The pot filler had two faucets, both of which had to be open for water to flow. D. 54

---

fail to cite any record evidence. See D. 48-1 ¶¶ 26–29. As to the statements of fact based upon excerpts of deposition testimony, see D. 48-1 ¶¶ 5–6, 21, the Court will consider them since there is some testimony in those excerpts based upon the deponents' personal knowledge and BST has not specified the specific portions of the testimony it objects to on hearsay grounds.

¶ 48; D. 58 ¶ 48.  The Owners did not know how to open or close the faucets and would "toy with them" to turn the water on and off.  D. 54 ¶ 49; D. 58 ¶ 49.  The faucet was left open for a period of days, and between December 16 and 17, 2016, water began flowing out of the open faucet, which ran overnight and caused damage to the Residence.  D. 48-1 ¶¶ 16–17; D. 53 ¶¶ 16–17; D. 54 ¶ 50; D. 58 ¶ 50.[2]  Had the valves been closed, the water release would not have occurred.  D. 54 ¶ 51; D. 58 ¶ 51.  The Residence was repaired in April 2017, which included removing the pot filler and capping the water line leading to it.  D. 54 ¶¶ 62–63; D. 58 ¶¶ 62–63.

## IV.   Procedural History

Chubb instituted this action on August 1, 2018 against Kagan, alleging a single count of negligence.  D. 1.  Chubb amended its complaint on October 18, 2019, alleging negligence against both Kagan (Count I) and BST (Count II).  D. 24.  Kagan and BST then filed crossclaims against each other.  D. 31; D. 32.  The parties stipulated to dismissal of Count I against Kagan and the crossclaims filed by Kagan and BST with prejudice, D. 47, leaving only Count II of the amended complaint against BST.  Chubb has now moved for summary judgment.  D. 48.  BST moved to dismiss Chubb's complaint and/or strike certain evidence for alleged spoliation of evidence.  D. 49.  BST then cross-moved for summary judgment.  D. 55.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 60.

---

[2] The parties dispute the cause of the water stoppage and subsequent flooding.  Chubb contends that the damage resulted from the pot filler's water line freezing, which stopped the water from flowing; as the Owners left open the faucets, water flowed out when the pipe thawed.  D. 48-1 ¶¶ 15–17; D. 53 ¶¶ 15–17.

V.   **Discussion**

　　A.   **Motions for Summary Judgment**

　　　　*1.   Chubb's Motion*

"To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 447 Mass. 141, 146 (2006). "[T]he existence of a duty is a question of law[] and is thus an appropriate subject of summary judgment." Id. Questions of "whether a defendant exercised reasonable care, the extent of the damage caused, and whether the defendant's breach and the damage were causally related" are typically left to a jury. Id.

　　　　　　a)   **Breach of Duty**

Chubb contends that BST breached its duty by violating portions of the Massachusetts Plumbing Code ("Code"). D. 48-10 at 7.[3] The relevant provision of the Code states:

> For water supply or drainage piping that is installed in an exterior wall, unconditioned space or similar areas that may be directly influenced by freezing temperatures, adequate provision shall be made to protect all pipes from freezing. . . . The protection and covering of water and waste pipes shall be the responsibility of the installing plumber.

248 C.M.R. § 10.05(8). Chubb argues that BST did not adequately provide protection from freezing or ensure same within the confines of the Code. D. 48-10 at 7. BST asserts that Chubb has not established a breach because it complied with these portions of the Code and it was not responsible for insulation at the Residence. D. 52 at 3–6.

---

[3] The parties do not dispute that BST owed a duty to the Owners, who owned the Residence and whom Chubb insured, to comply with the applicable Code. See D. 48-10 at 6; D. 52 at 4–6.

Chubb has not satisfied the breach element as a matter of undisputed fact. While violation of a code provision is considered evidence of negligence, it is not conclusive as to breach. See McAllister, 429 Mass. at 304; Campbell v. Cape & Islands Healthcare Servs., Inc., 81 Mass. App. Ct. 252, 254–55 (2012). Nor is Chubb's expert report, which opines that BST violated the Code and that such violations "led to the freezing of the line and the incident water loss." See D. 48-9 at 3. An expert report cannot conclusively establish violation of the Code for summary judgment purposes. See Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir. 1993); Campbell, 81 Mass. App. Ct. at 255 (citing Perry v. Medeiros, 369 Mass. 836, 842 (1976) (affirming trial judge's exclusion of testimony from building inspector that building code was violated as it was "function of the jury to decide whether there was a violation of the code" based upon evidence in the record).[4] Even so, the record is disputed as to whether BST indeed violated the Code that Chubb relies upon. While Chubb points to BST's admission that it did not inspect the pot filler's insulation after installation and that it knew of (and warned Kagan of) the risks of installing a pot filler in an exterior kitchen wall, D. 48-1 ¶¶ 19–20; D. 53 ¶ 19–20, BST did not perform any of the insulation work at the house, another subcontractor did. D. 48-8 at 7; D. 50-2 at 8; see Amica Mut. Ins. Co. v. H.F.P. Sprinkler of Natick, Inc., 66 Mass. App. Ct. 1109, 2006 WL 1473326, at *2 (2006) (concluding in pipe-freezing negligence case that jury could find that defendants who installed

---

[4] Competent expert testimony may aid a jury in determining the contours of the duty of care, or breach of same, see Leslie v. Interlock Indus., Inc., 74 Mass. App. Ct. 1123 (2009) (affirming need for expert testimony when breach turned on questions "beyond the ordinary understanding" of a lay juror, like whether construction complied with applicable industry standards), but neither Chubb nor its expert Mikal Balmforth has offered any indication of Balmforth's qualification or expertise in plumbing or of Massachusetts' plumbing regulations. See Nna v. Am. Standard, Inc., 630 F. Supp. 2d 115, 136 (D. Mass. 2009) (rejecting expert testimony when "no indication from [expert's] qualifications" of expertise in specific subject-matter). Moreover, as described above, the expert report was unsworn and thus not properly part of the summary judgment record. See Garside, 895 F.2d at 50.

pipes were not responsible for insulation of same). Furthermore, the Residence passed its final plumbing inspection from the Town, which enforces Code compliance, and a subsequent home energy inspection that did not note any issues with the pot filler's insulation. D. 54 ¶¶ 35, 43–46; D. 58 ¶¶ 35, 43–46; see Preferred Mut. Ins. Co. v. Barros Co., Inc., No. 15-cv-13414-FDS, 2018 WL 3977122, at *9 (D. Mass. Aug. 20, 2018) (noting that "compliance with a statute or regulation is prima facie evidence of due care"). Accordingly, the issue of whether BST breached any duty of care remains disputed.

                b)       <u>Causation</u>

To prevail on its negligence claim, Chubb must also show that the frozen pipe was a "cause in fact of the injury," Kent v. Com., 437 Mass. 312, 320 (2002), but it has not done so on this record. As a preliminary matter, two bases for Chubb's causation theory must be rejected. First, as the Court previously addressed, Chubb cannot rely upon an unsupported allegation in its unverified complaint to support factual cause. See p. 2 n.1, supra; D. 48-1 ¶ 2. Second, despite Chubb's assertion to the contrary, BST did not admit that a pipe freeze caused the water damage. See D. 48-5 at 3 (denying request for admission that pipe froze); D. 48-8 at 6 (responding to interrogatory that BST "state all information, *whether believed to be correct and credible or not*, concerning the cause of the water discharge" that "water inside the pot filler piping apparently froze sometime prior to December 17, 2016") (emphasis added). There is no other admission in the record.

The remaining evidence in the record to establish causation is also disputed.[5] For example, although Chubb cites to Mrs. Panagiotopoulos' testimony that she learned a pipe freeze occurred,

---

[5] As described above, Chubb's expert concludes that the pipe froze and then thawed, causing water to flow out and damage the house, though such report is not properly in the summary judgment record. See D. 48-9; Garside, 895 F.2d at 50. To the extent BST also "disputes the conclusions

7

see D. 48-1 ¶¶ 5–6, she also testified that she did not know "whether the pipe freezing or thawing caused the pot filler to release the water." D. 48-2 at 7. Moreover, as the Owners did not know how to open or close the faucets and would "toy with them" to turn the water on and off, D. 54 ¶ 49; D. 58 ¶ 49, there is at least one alternate cause in the undisputed record.

Chubb also must show that a pipe freeze was the proximate cause of the damage, meaning that it was "a foreseeable result of the defendant's negligent conduct." Kent v. Com., 437 Mass. at 320. Although Chubb's present showing precludes summary judgment in its favor as to the causation element, there is no dispute that BST knew of the risks involved with installing the water line on an exterior wall. D. 48-1 ¶ 19; D. 53 ¶ 19. In other words, if a jury found that a frozen pipe caused the damage here, it could also find that such damage was foreseeable to BST. See R.L. Currie Corp. v. E. Coast Sand & Gravel, Inc., 93 Mass. App. Ct. 782, 786 (2018) (explaining that foreseeability inquiry requires showing only that "general character and probability of the injury be foreseeable").

For all these reasons, the Court denies Chubb's motion for summary judgment. D. 48.

    2.    BST's Motion

BST has cross-moved for summary judgment on the negligence claim. D. 55. Instead of filing a memorandum of law in support of its motion, BST relies upon its motion for sanctions due to spoliation and opposition to Chubb's motion for summary judgment. Id. In opposition, Chubb asserts that BST's cross-motion for summary judgment was procedurally deficient, and also incorporates its prior motion papers. D. 59. Even assuming that BST properly filed its motion, the motion necessarily fails. As the Court concluded above, Chubb has not met its burden for

---

of Chubb's expert," see D. 52 at 3, such challenges go to the weight, not admissibility of the testimony, susceptible to cross-examination, and "evaluated by the finder of fact at trial." Pac. Indem. Co. v. Dalla Pola, 65 F. Supp. 3d 296, 302 (D. Mass. 2014).

purposes of summary judgment with respect to the breach and causation elements of the negligence claim.  In other words, BST has pointed to genuine issues of fact on two elements of the claim, which here likewise precludes summary judgment in BST's favor.  Accordingly, the Court denies BST's motion for summary judgment.  D. 55.

### B. Motion to Dismiss or Strike Evidence Due to Spoliation

BST has moved to dismiss Chubb's claim, or alternatively to strike Chubb's expert report, as a sanction for alleged spoliation of evidence.  D. 49; D. 50 at 1.  BST asserts that Chubb did not preserve the pot filler, water supply line, insulation, and other physical evidence such that BST could not inspect any of it once renovations were completed, resulting in prejudice.  D. 50 at 8–9.

"Spoliation is the intentional, negligent, or malicious destruction of relevant evidence" that a party had a duty to preserve.  Gordon v. DreamWorks Animation SKG, Inc., 935 F. Supp. 2d 306, 313 (D. Mass. 2013) (quotations and citation omitted); Ortiz v. City of Worcester, No. 4:15-CV-40037-TSH, 2017 WL 2294285, at *2 (D. Mass. May 25, 2017).  "Possible sanctions include dismissal of the case, the exclusion of evidence, or a jury instruction on the spoliation inference." Hofer v. Gap, Inc., 516 F. Supp. 2d 161, 170 (D. Mass. 2007).  Once spoliation is found, courts determine the appropriate sanction based upon several factors, namely "'prejudice to the non-offending party' and the 'degree of fault of the offending party.'"  Fireman's Fund Ins. Co. v. Bradford-White Corp., No. 12-cv-10509-NMG, 2014 WL 1515266, at *3 (D. Mass. Apr. 15, 2014) (quoting McGuire v. Acufex Microsurgical, Inc., 175 F.R.D. 149, 156 (D. Mass. 1997); Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 29 (1st Cir. 1998)).

Here, the pot filler was removed from the Residence and the water line capped when renovations occurred starting in April 2017.  D. 54 ¶¶ 62–63; D. 58 ¶¶ 62–63.  Moreover, Chubb does not challenge BST's assertion that such physical evidence was lost or destroyed, or that it

9

lacked control or notice over the potential claim, but rather contends that its conduct does not warrant sanctions because it was not negligent, reckless or intentional. See D. 56 at 8–10. Accordingly, the Court assesses the alleged conduct of Chubb in relation to the sanctions urged by BST.[6]

As to dismissal, such an extreme sanction "is usually considered appropriate only when a party maliciously destroys relevant evidence for the sole purpose of preventing an adverse party from examining it." Gordon, 935 F. Supp. 2d at 315; Sharp v. Hylas Yachts, LLC, 872 F.3d 31, 42 (1st Cir. 2017). Here, there is no evidence in the record that Chubb acted deliberately or in bad faith. As to reckless conduct, there is no factual predicate to support that Chubb, its counsel, claims adjusters or other agents of the insurer acted recklessly as to the preservation of evidence. D. 56 at 9-10. As to prejudice to BST, there is also a dearth of evidence of same as a result of any alleged spoliation by Chubb given the sequence of BST's notice of a potential issue concerning the plumbing at the Residence and the conduct of discovery in this case. See D. 56 at 10-13. Even if this Court had concluded that Chubb acted recklessly, some of the harsh sanctions that have been imposed against sophisticated insurers, like Chubb, are not warranted given the circumstances here. See Amica Mut. Ins. Co. v. BrassCraft Mfg., Co., No. 17-cv-103-JJM-LDA, 2018 WL 2433560, at *3–4 (D.R.I. May 29, 2018) (dismissing case due to spoliation upon concluding that insurance company, as subrogee, acted recklessly in failing to preserve physical evidence central to flood causation theory and that insurance company was "less than truthful" in discovery responses to defendant that twice requested opportunity to examine physical evidence and expert

---

[6] Given the Court's conclusions above regarding Chubb's expert report, the Court declines as moot BST's request to strike the report from the summary judgment record as a sanction for spoliation. D. 49.

report of same, but asserted that it did not have an expert report and did not disclose that evidence was lost or destroyed); cf. N. Assur. Co. v. Ware, 145 F.R.D. 281, 283–84 (D. Me. 1993) (excluding expert testimony at trial based upon expert's examination of burned dwelling when insurance company "fail[ed] to make reasonable arrangements within the range of possibility to preserve the evidence at the scene that was relevant to determining the causation of the fire"). Accordingly, the Court denies BST's motion for sanctions due to spoliation.  D. 49.

### VI. Conclusion

For the foregoing reasons, the Court DENIES Chubb's motion for summary judgment, D. 48, DENIES BST's cross-motion for summary judgment, D. 55, and DENIES BST's motion for sanctions due to spoliation, D. 49.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge